IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., UNILOC LUXEMBOURG, S.A., | § § § § § § § § § § § § | CIVIL ACTION NO. 2:17-CV-00174-JRG |
| Plaintiffs, | | |
| v. | | |
| NUTANIX, INC., | | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Nutanix, Inc.'s Motion to Dismiss the Complaint for Improper Venue and Failure to State a Claim (Dkt. No. 22.) Having considered the Parties' arguments and for the reasons set forth below, the Court hereby finds that the Motion should be and hereby is **GRANTED-IN-PART**. It is hereby **ORDERED** that the above-captioned case is **DISMISSED WITHOUT PREJUDICE**.

**I.   BACKGROUND**

On March 6, 2017, Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. ("Uniloc") filed suit against Nutanix, Inc. ("Nutanix"), alleging patent infringement of U.S. Patent No. 6,110,228 ("the '228 Patent"). (Dkt. No. 1 at 2–8.)

Nutanix, a Delaware corporation with a principal place of business in San Jose, California, offers cloud-computing software and services. (Dkt. No. 1 at 2; Dkt. No. 23 at 1.) Between January 1, 2016 and June 5, 2017, Nutanix owned or leased real estate for business purposes in the Northern District of California; the Western District of Washington; the Eastern District of Virginia; and the Middle District of North Carolina. (Dkt. No. 29-2, Ex. A at 6.) Although Nutanix did not and does

not own or lease any real estate in the State of Texas (*Id.*), Nutanix allows its employees to work from their individual residences. (Dkt. No. 22 at 5.) Accordingly, at the time the complaint was filed, Nutanix had nineteen employees who worked from their individual residences in the Eastern District of Texas. (Dkt. No. 29-2, Ex. A at 6.) Nutanix's employees do not stock physical product in their residences. (*Id.* at 2.) Additioanlly, Nutanix's servers, which host Nutanix's cloud-computing software, are not located in the Eastern District of Texas. (*Id.*)

## II. LEGAL STANDARD

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'" (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957))). If venue is not proper, a defendant may move to dismiss the case or transfer it to a district in which the case could have been originally brought. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).

Under §1400(b), a domestic corporation resides only in its state of incorporation. *Fourco*, 353 U.S. at 226; *TC Heartland*, 137 S. Ct. at 1521. If a domestic corporation does not reside in the district in which the case is filed, venue remains proper if the domestic corporation has committed acts of infringement and has a regular and established place of business within the district. 28 U.S.C. § 1400(b). The defendant bears the burden of establishing improper venue. *See Intellectual Ventures II LLC v. FedEx Corp., et al.*, Civ. No. 2:16-cv-980-JRG, 2017 WL 5630023, at *4–5 (E.D. Tex. Nov. 22, 2017) (collecting cases).

### III.    ANALYSIS

The Court conducts the § 1400 analysis by considering: (1) where the defendant resides; and (2) where the defendant has committed acts of infringement and has a regular and established place of business.

#### A. Residence

Nutanix, a Delaware corporation, does not reside in Texas. (Dkt. No. 1 at 2; Dkt. No. 23 at 1.) Accordingly, venue is only proper if Nutanix has committed acts of infringement and has a regular and established place of business within the Eastern District of Texas. 28 U.S.C. § 1400(b).

#### B. The Judicial District Where the Defendant Has Committed Acts of Infringement and Has a Regular and Established Place of Business

Having found that Nutanix does not "reside" within the Eastern District of Texas, the Court now considers whether "the defendant has committed acts of infringement and has a regular and established place of business" in the Eastern District of Texas. 28 U.S.C. § 1400(b).

In *TC Heartland*, the Supreme Court held that the general venue statute did not modify the meaning of § 1400(b), the patent venue statute, and reaffirmed its holding in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1959). *TC Heartland*, 137 S. Ct. at 1521. The Federal Circuit has since clarified the definition of a "regular and established place of business" under § 1400(b). *See In re Cray*, 871 F.3d 1355 (2017). As established under *In re Cray*, (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *Cray*, 871 F.3d at 1360.

The Federal Circuit's holding in *Cray* is particularly instructive given that the underlying facts there are similar to those before the Court in this case. In *Cray*, the defendant was a Washington corporation that sold advanced supercomputers. *Id.* at 1357. Although it did not own or lease any real estate within the Eastern District of Texas, one of its sales executives, Mr. Harless,

worked remotely from his own residence for over seven years. *Id.* Mr. Harless was identified as the account manager for at least twenty-one separate sales of the accused products. *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781, 785 (E.D. Tex. 2017). Mr. Harless corresponded with customers using a phone number with an Eastern District of Texas area code—this same number was listed on customer invoices for Cray sales made by Mr. Harless. *Id.*; *Cray*, 871 F.3d at 1357. Although Mr. Harless did not store samples or products at his house, and could not have done so because "the accused systems take up entire rooms and weigh thousands of pounds," Mr. Harless had access to online sales brochures, which he could print from his home, that he was directed to provide to interested customers. *Raytheon*, 258 F. Supp. 3d at 794.

In addition to sales, Mr. Harless's responsibilities included new account development and key account management within the financial, biomedical, and petroleum industries. *Id.* For his efforts, he received reimbursement for his cell phone usage for business purposes, internet fees, and mileage or "other costs" for business travel. *Id.* Cray also provided Mr. Harless with "administrative support" from its Minnesota office. *Id.* Mr. Harless's work with Cray resulted in sales of Cray systems in excess of $345 million. *Cray*, 871 F.3d at 1357. Against this backdrop, the Federal Circuit concluded that, taken together, these facts did not support a finding that Cray had a regular and established place of business within this District. *Id.* at 1366–67 ("[T]e facts here do not show that Cray maintains a regular and established place of business in the Eastern District of Texas; they merely show that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer.").

The facts at issue in *Cray* also parallel those present in *In re Cordis*, another Federal Circuit case where the defendant allowed its employees to work from their individual residences. *In re Cordis*, 769 F.2d 733 (Fed. Cir. 1985). In *Cordis*, the defendant was a Florida corporation that

employed two full-time sales representatives based in Minnesota. *Id.* at 735. Both employees were paid a salary plus commission and worked exclusively for the defendant, which supplied them with a company-owned car. *Id.* In addition, the defendant engaged a Minnesota secretarial service to receive messages, provide typing services, mail Cordis literature, and receive shipments of Cordis sales literature. *Id.* The representatives' business cards listed the telephone number of the Minnesota secretarial service. *Id.* Furthermore, the two employees stored Cordis literature, documents, and products in their home offices. *Id.* Although Cordis was not registered to do business in Minnesota and did not own or lease property in the state, the accused products could be ordered directly from the Florida office or through a Minnesota sales representative. *Id.* Based on these facts, the Federal Circuit denied Cordis's petition for a writ of mandamus, *id.* at 734, and concluded that "the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not . . . whether it has a fixed presence in the sense of a formal office or store." *Id.* at 737.

In distinguishing the facts of *Cray* from those present in *Cordis*, the Federal Circuit explained that Cray did not have a regular and established place of business in this District because Mr. Harless's residence was not a "place of the defendant." *Id.* at 1364–65 ("The third requirement identified above, that the regular and established place of business must be 'the place of the defendant,' is crucial here."). While the court did not expressly overrule its prior holding in *Cordis*, the Federal Circuit in *Cray* focused on the "physical presen[ce]" of the employees, marketing materials, and the products. *Id.* at 1365 ("No evidence indicates that Cray played a part in selecting the place's location, stored inventory or conducted demonstrations there, or conditioned Mr. Harless or Mr. Testa's employment or support on the maintenance of an Eastern District of Texas location."). The Federal Circuit noted that unlike Cray, Cordis "specifically depended on

employees being physically present at places in the district." *Id.* The Federal Circuit emphasized that Cordis's employees stored physical products in their homes, "like distribution centers," even though the supercomputers at issue in *Cray* could not have been practically stored in an individual residence. *Id.* In addition, the Federal Circuit explained that the appellant's employees in *Cordis* received secretarial services from a third-party physically located within the district, whereas all expense reimbursements and administrative support for Cray's employees "were provided from outside of the district." *Id.* The availability of Cray's online marketing materials, which could be printed and distributed from an employee's home, was "not compelling," because the materials were also available "in places where no one would argue that Cray established a regular place of business." *Id.* at 1366.

While there is a fine distinction between *Cordis* and *Cray*, the case before this Court falls closer on this spectrum to *Cray* than it does to *Cordis*. Although Nuanix has nineteen employees who are permitted to work from their individual residences in the Eastern District of Texas, the Court finds that none of these residences are "places of the defendant," as explained by the Federal Circuit in *Cray*. (Dkt. No. 29-2, Ex. A at 5.) Nutanix does not lease, or own any portion of these employees' homes in the Eastern District of Texas. *Id.* at 1364–65. Nutanix's employees do not regularly maintain physical inventory in this District, are "free to live where [they] cho[o]se as far as [the defendant] [is] concerned," and do not receive reimbursements and support conditioned on their location within this District. *Cray*, 871 F.3d at 1365 (quoting *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1185 (7th Cir. 1969)). Contrary to Plaintiffs' assertions, it is not enough under current precedent that Nutanix's employees "maintain computer files" from their homes or "connect[] to Nutanix's accused computer platform." (Dkt No. 29 at 3.)

In addition, Nutanix emphasizes that "[t]he territory to which Nutanix sales teams are assigned often bears little relation to the team members' place of residence." (Dkt. No. 23 at 1.) Plaintiffs have not offered any compelling evidence that the employees' location in the Eastern District of Texas is material to Nutanix. *Cray*, 871 F.3d at 1365. In addition, unlike Mr. Harless in *Cray*, Nutanix does not have an Eastern District of Texas phone number associated with its business operations.[1] (Dkt. No. 22 at 5.) As emphasized by the Federal Circuit in *Cray*, venue is not automatically established "where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant." *Cray*, 871 F.3d at 1365. Although the Federal Circuit has noted that "a relative comparison of the nature and activity [of the alleged place of business] may reveal, for example, that a defendant has a business model whereby many employees' homes are used by the business as a place of business of the defendant," the Court does not find that such a model applies under these particular facts. *Id.* at 1364.

Finally, Plaintiffs argue that the positions held by Nutanix's Eastern District of Texas employees indicate that Nutanix has a sufficient presence in this District to support a finding of proper venue. (Dkt. No. 32 at 2.) Nutanix's employees have wide-ranging responsibilities, spanning from "Senior Provider Sales Representative" to "Global Regulatory Compliance Manager," and from "Systems Engineer," to "Field Marketing Manager." (Dkt. No. 29-2, Ex. A at 5.) Plaintiffs argue that such responsibilities include technology, sales, and finances, all important considerations in a patent infringement suit. (Dkt. No. 32 at 2.) The Court does not disagree that these employees may have pertinent knowledge related to the case. However, in determining whether an individual's residence is a "place of the defendant," the Court considers the extent to which the place was established, adopted, or ratified by the defendant—not the extent

---

[1] However, this fact seems to be of decreasing relevance since ubiquitous cellphones tied to area codes far and wide are rapidly replacing landlines where the area code is tied to the fixed phone line.

7

of an employee's knowledge of facts material to the patent infringement case. *Cray*, 871 F.3d at 1365. There is no indication that the employment of the employees with non-sales responsibilities is expressly or impliedly connected to presence location within this District. *See id.* at 1366.

Accordingly, the Court finds that Nutanix does not have a regular and established place of business within this District. Having found that Nutanix does not have a regular and established place of business in the Eastern District of Texas, the Court finds it unnecessary to proceed to the "acts of infringement" prong of the venue analysis.

### C. Section 1406 Transfer

Having found that venue is not proper in this district, Plaintiffs request that the Court transfer the case to the Western District of Texas, rather than dismiss the claims, as requested by Defendant. (Dkt. No. 29 at 4.) When a court finds venue improper, it may, in the interest of justice, transfer the case to any district or division in which the case could have been brought. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Under § 1406(a), the moving party carries the burden of demonstrating the appropriateness of a transfer over dismissal. *See, e.g.*, *Gibbons v. Fronton*, 661 F. Supp. 2d 429, 433–34 (S.D.N.Y. 2009) (holding that under § 1406(a), "[t]he party seeking transfer bears the burden of establishing personal jurisdiction over the defendants in the transferee forum"); *In re First Solar, Inc. Derivative Litg.*, Civ. No. 12-417-GMS-CJB, 2013 WL 817132, at *12 (D. Del. Mar. 4, 2013) ("The moving party bears the burden to establish the appropriateness of transfer under Section 1406.").

Plaintiffs contend that the Western District of Texas would be the most appropriate alternative forum for the resolution of this case because "virtually all of [Uniloc's] relevant evidence is located" in Texas. (Dkt. No. 29 at 4.) Plaintiffs explain that trial in the Northern District

of California, as opposed to the Western District of Texas, would be significantly more inconvenient for Uniloc than Nutanix.[2] (*Id.* at 5.) In support of their convenience argument, Plaintiffs refer to prior orders from this Court, in which the Court found that under § 1404(a), the public and private interest factors disfavored transfer from the Eastern District of Texas. (Dkt. No. 29-3, Ex. B; Dkt. No. 29-4, Ex. C.) However, "[i]f venue in the present forum is improper, the court cannot use 28 U.S.C.A. § 1404(a), which applies only when the original federal district is a proper venue. Instead, transfer will be under 28 U.S.C.A. 1406(a), which applies when the original venue is improper." § 3803.1Law Applicable—Forum Selection Clauses, 14D Fed. Prac. & Proc. Juris. § 3803.1 (4th ed.). Section 1404 is "the statutory enactment of the doctrine of *forum non conveniens* tempered to allow transfer rather than dismissal." *Dubin v. U.S.*, 380 F.2d 813, 816 (5th Cir. 1967). Accordingly, this Court's prior orders under § 1404(a) are not binding or controlling in a § 1406 transfer analysis, which does not include the same private and public interest considerations of convenience as those involved in a § 1404(a) analysis. *See Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1109 (5th Cir. 1981) ("A transfer under § 1406(a) is based not on the inconvenience of the transferor forum but on the impropriety of that forum." (quoting *Martin v. Stokes*, 623 F.2d 469, 472 (6th Cir. 1980))).

A case may be transferred under § 1406(a) to "any district or division in which it could have been brought" if the transferor forum finds that it is "in the interest of justice." 28 U.S.C. § 1406(a). Nutanix has presented evidence that venue is not proper in the Western District of Texas. As discussed above, Nutanix is not incorporated in the State of Texas. (Dkt. No. 23 at 1.) Nutanix

---

[2] Uniloc also argues that Nutanix would not be inconvenienced by transfer to the Western District of Texas because "Nutanix already maintains a regular place of business" in the Western District. (Dkt. No. 29 at 5.) Plaintiffs assert that Nutanix has a regular and established place of business, despite significant evidence demonstrating otherwise, solely based on the fact that "Nutanix['s Motion] does not deny Uniloc's allegation [in the Complaint] that Nutanix maintains a regular place of business in or around Austin (as well as Dallas and San Antonio)." (*Id.*) Plaintiffs have not presented any evidence to rebut Nutanix's submitted declarations and interrogatory responses, making clear that Nutanix does not have a "place of the defendant" in the Western District of Texas. (*Id.* at 4–5; Dkt. No. 32 at 3.)

does not have any offices in the State of Texas, let alone the Western District of Texas. (*Id.*) Although Nutanix posted job openings in the Western District of Texas, *i.e.*, Commercial Account Manager and Global Account Manager, Nutanix has explained that Nutanix's sales teams are "not necessarily assigned by physical proximity." (Dkt. No. 23 at 5.) Accordingly, as discussed above, there is no evidence that there is a "place of the defendant" such that Nutanix has a regular and established place of business within the Western District of Texas. In short, Plaintiffs have not met their burden to establish that venue is proper in the Western District of Texas. Accordingly, transfer is not an option in such a situation.

In light of this conclusion, the Court finds that has little alternative but to dismiss the case pursuant to 28 U.S.C. § 1406(a).

## IV. CONCLUSION

The Court finds that venue is improper within this District. Accordingly, it is hereby **ORDERED** that the above-captioned case is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1406(a). The Clerk is directed to **CLOSE** this case.[3]

**So ORDERED and SIGNED this 6th day of December, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[3] In light of this result, the Court declines to address the substantive 35 U.S.C. § 101 issue raised in the Defendant's Motion to Dismiss the Complaint for Improper Venue and Failure to State a Claim (Dkt. No. 22).